18-3301 James A. Lowe et al. James Robert Clyde Sanders v. Brenda K Bowers Oral argument as follows. Fifteen minutes will be shared by the appellate. Fifteen minutes will be allocated. Good morning. Good morning. May it please the court. My name is Robert Sanders. I'm one of the three appellants in this case. The other appellant is James Lowe, Attorney James Lowe. And the third is the probate estate of Fred Fulson. At issue in this case is a central question of law as to who owns an Ohio-Rico claim that was asserted by Mr. Fulson in the Court of Common Pleas. Is that Ohio-Rico claim a personal claim that is owned by Mr. Fulson that he has the right to assert, has standing to assert, which is the appellant's position? Or alternatively, is that a claim that is owned by the trustee in a Chapter 7 involuntary bankruptcy? This is the question presented in this litigation. The claim that was brought in the Court of Common Pleas was brought under the Ohio-Rico statute. And as the court will know, of course, there is a federal RICO statute and many states have adopted state law counterparts. Most typically, the state court counterparts will track and mirror very closely the language of the federal RICO statute. In this instance, however, Ohio deviated significantly from the federal RICO language, particularly with respect to standing. In the federal RICO statute, one must sustain direct injury in order to be a RICO plaintiff. The legislature in Ohio, and there's a presumption, of course, that the legislature is aware of existing law when it passes its own law, adopted language that standing would vest with anyone who is indirectly injured. That is a marked difference from the federal statute. In this instance, there was clearly indirect injury by Mr. Folson due to the conduct alleged in the state RICO case. We know that there was indirect injury because, for example, in the Ohio Supreme Court case of Adair v. Wozniak, in that case the court explained why the general rule is that a shareholder cannot seek to recover for injury to a corporation. Only the corporation can seek recovery. In that case, the Ohio Supreme Court explained that the shareholder's injuries are both indirect and duplicative of the injuries sustained by the corporation, and therefore there can only be a corporation seeking a remedy, either directly or through a derivative suit by a shareholder. So if you look at that Adair language, that the injury to a shareholder is indirect to the injury to the corporation, and marry that concept with the deliberate decision of the Ohio Supreme Court to include indirect injury to provide standing to persons who were indirectly injured, we believe it is quite clear on the plain language of the statute that Mr. Folson owns and has standing to bring the RICO claims he asserted in his state RICO case. That would assume that the Ohio legislature displaced the common law, right? And isn't there a presumption that they would have to legislate very clearly in order to displace the common law rule? That's a rule of statutory construction. Well, and that's what we're supposed to do here. Right, but the principle rule under Ohio case law is that you don't even resort to rules of statutory construction if the language is clear. And the language here is indirect, which since there's no statutory definition, then one looks to the dictionary definition. And the dictionary definition, which we have cited in our briefing, clearly would encompass this kind of shareholder injury. It's not direct injury. It's clearly indirect injury. We don't believe it was correct to go to that rule of statutory construction because the language is clear and unambiguous. May I ask, it's injury as in a dare. A dare talked about indirect, but a dare held that it wasn't an injury. It was an injury to the corporation and it couldn't be also an injury to the individual, right? Right. So why is that not very helpful in deciding this one against you? Because their reasoning was that the injury was indirect in that case. But the legislature adopted language permitting indirect injury. That's your argument? Yes. That the inclusion of indirect, I'm still not sure that's contrary. I mean, that that distinguishes a dare. I have to think more, but now I at least understand how you reason that. I'm trying to show how a dare indicates that the type of injury a shareholder sustains is indirect. And the statutory language allows recovery for indirect injury. That's the sequence of thinking there. So we think that the analysis ends simply by looking at the plain language of the statute. There's no need to apply other rules of statutory construction. If one were to apply rules of statutory construction, though, we believe the best rule to apply, the foremost rule to apply would be the presumption that in enacting legislation, the legislature is aware of the state of the law. And clearly the Ohio legislature was aware of the federal RICO law. And unlike virtually every other state, it deviated markedly from the federal RICO standing provision. And, in fact, we cite the case law in our brief that the Ohio RICO statute is generally regarded as the most muscular, strongest RICO statute in the country. And, of course, RICO was originally a criminal racketeering statute, but it has a private remedy. In effect, it vests private citizens with the right to serve as a private attorney general. The Ohio legislature, as it was its prerogative in making public policy, made the determination that it wanted to police the commercial marketplace more broadly than the federal RICO statute polices the private commercial marketplace by expanding the private remedy available under the Ohio RICO. So everything in your argument hinges, and I understand it, on the inclusion of the word indirect in the statute, which is different than the federal statute, but your opponent makes the argument that that only modifies causation. It only goes to proximate cause, so you can be directly or indirectly, or the cause can be direct or indirect. What do you say to that argument? Rather than to the injury, right? Right, but the language of the statute is any person indirectly injured. It's not someone who sustains indirect injury. Well, you're indirectly injured by something. Right, right, but it's giving standing to a person indirectly injured, and if you look at the Adair v. Wozniak case I just indicated, that is a form of indirect injury. A shareholder can be indirectly injured. And so I understand the trustees' argument. They view it as indirect means the radius of proximate cause rather than vesting new causes of action on people. We simply disagree with that. We think that the word indirectly injured gives additional claims, not just more remote claims, but additional substantive claims. And that is our position, and we think the legislative history would support that. You did or you didn't confer with a trustee at all about the problem here? Well, Mr. Fulson, our client, the client of Mr. Lowe and myself, by the way, I should mention, I wanted to take ten minutes. And Mr. Lowe's counsel, Mr. Ashton, dear me, he was going to reserve five for rebuttal. Tell Mr. Ford. Yes, I did tell him that. We filed the Ohio RICO claim based on the plain language of the statute. We saw no, we didn't see this as treading on the property of the estate. The property, the estate. That's the answer to, the answer is no. No, right, we did not. And now your time has expired. You brought it up, so you probably need to let your co-counsel. But Mr. Ashton was going to. Good morning, and may it please the Court, my name is Dan Shuey, and I'm here on behalf of Brenda Bowers, the successor trustee to the NGP Bankruptcy Estate. Appellants in this appeal, in an attempt to evade their acts of contempt, and the sanctions that were imposed as a consequence of that contempt, are asking this Court to brush aside well-established precedent in Ohio law and Sixth Circuit law regarding derivative lawsuits, the application of the automatic stay, and a court's inherent authority to award attorney's fees as sanctioned for contempt. But appellants offer no valid basis for this Court to take such an action, and they rely on inapplicable case law, and they rely on a misinterpretation of the Ohio Corrupt Practices Act to make their argument. And it's important to understand that if adopted, appellants' arguments lead to dangerous and absurd results. By undermining the derivative lawsuit concept in Ohio law, it allows equity holders, like Mr. Folson was, to go from the end of the line on recovering from the bankruptcy estate to going to state court themselves and recovering first in line. So it allows them to evade the bankruptcy priority process. That's a policy argument, and that probably comes at the end, but I wonder if you'd first start with why they don't have a good point about Adair and Indirect being distinguishable, and now we have it in the Corrupt Practices Act, so your best response to that argument. Sure. So, Your Honor, the Adair case, which they cited to the exact language that we look at, is that a shareholder has no standing to assert a claim for injuries done to a corporation because it's both duplicative and indirect. There's two reasons why those claims are not held by a shareholder. Nobody's quarreling with the holding of Adair. It's just counsel here has figured a way he thinks that Adair supports his claim, and the word indirect is the distinguishing feature, as I get his argument, because the court said it wasn't indirect or in Adair. It was indirect. Sure, Your Honor, and the indirect language in the OCPA does affect part of the Adair. One of the hurdles that Adair said prevents a shareholder from having claims, but it doesn't address the duplicative damages part. That's the argument you would say. Okay, indirect, so what? Right, Your Honor, and that's all the cases they rely on for otherwise are all either non-shareholder cases, or they are non-duplicative damages. There's no case out there that allows a shareholder to assert a duplicative claim for damages under any type of language. The Ironworkers case cites to a Minnesota example where the indirect language was intended, in an antitrust Minnesota statute, it was intended to increase the change of causation. You can be further removed, but it wasn't intended to address duplicative damages. Right, so you're saying that the work of the legislature, which your opponent relies on, in adding the word indirect can't overcome Adair's ban on duplicative lawsuits. Or duplicative recovery, I guess is the answer. They're the exact same damages, and that's exactly right, Your Honor. The legislature gave no indication that there was any intent to get rid of the common law. We usually don't try to go behind and figure the intent. I mean, we don't have to here, do we? No, and there's nothing that would even make you want to look to see if they had any intent to go and change the entire derivative concept in Ohio law, because they don't address that duplicative damages. And so Adair continues to hold strong. And that's consistent with this court's ruling in Vandresser, which finds that claims that incurred damages to the corporation or the estate belong to the estate and not the shareholder. And if you look at Folson's complaint that the appellants filed in state court, Mr. Folson brought it solely as a basis as his 100% owner of NGP. And the damage they sought were the damages that were incurred by NGP. And so there's no question here that these damages are duplicative and that's what they're seeking. Those claims, therefore, under Vandresser, this court's opinion, belong to the trustee in the estate to settle or to prosecute. And then the attempt by the appellants to then assert those claims in state court constitutes an attempt to take away ownership of estate property in violation of automatic stay. And once you come to that conclusion, your honors, there's no challenge here as to the discretion actually engaged in by the bankruptcy court at that point to then issue contempt and move forward from that point. And it just makes, if you were to change the law and find that this was intended to override it there, as I mentioned earlier, the policy arguments of, which we saw in reality here, was when a trustee or any corporation, under that matter, tries to settle a claim with a defendant that they're bringing a claim against, it's going to be much harder, if not impossible, to settle those claims if any shareholder of that corporation or anybody in that position can then go re-bundle those claims as a conspiracy or a crash of that claim and try to recover those damages on their own. It would just undermine the ability of the trustee or any corporation to settle those types of claims. So the OCPA doesn't change any of the concerns of ADARE. I'd also say that the statute not only talks about indirectly injured, but then it also requires actual damages to the person asserting the claim. And so I think that also supports the idea that the actual damages here are incurred by the company and the estate. And it lends further support that the General Assembly never intended to undermine the concept of derivative litigation by the OCPA. Just briefly, the bankers' case that they rely on goes out of its way as well to point out that when a shareholder has a unique or individual form of damages, they can bring a claim, but that does nothing to disturb the common law, a well-established principle, that when the although Mr. Sanders did not address the attorney's fees issue, I would just also ask the court to also affirm the trial court, the bankruptcy court's inherent authority to issue attorney's fees as a sanction for contempt. The Baker-Botts case that the appellants cite to in their briefing involves an application under Section 330 and the Chapter 11 bankruptcy were here. These were awarded as part of a sanction during a contempt hearing. It involves an entirely different process, and Baker-Botts just really isn't applicable to the situation. So we ask the court to affirm that the bankruptcy court had the authority and correctly decided that the RICO claim was the property of the estate and that the bankruptcy court properly awarded fees as a sanction for the contempt in this matter. Thank you. Good morning. Rick Ashton on behalf of co-appellant James Lowe. A few questions I wanted to address that were raised by the panel with respect to this impact of ADARE with respect to the General Assembly's passing of the OCPA. I think one point of contention is that the OCPA couldn't have been aware of ADARE when it was passing this legislation. The OCPA, I believe, was passed in 85. ADARE was a case in 86. Putting those principles aside, though, to the extent that ADARE is a case, a shareholder cannot bring a claim in that case, which was not an OCPA case, because it was indirect. That same terminology is used by the Ohio General Assembly as part of the Ohio RICO statute. What do we have at that point in time, by the way? We had a series of federal case law out there dealing with the federal RICO statute. Shareholders attempting to bring claims under... It also tells us that that's one of the distinguishing features from Ohio from the federal. Do you want to include that? Is that purposeful? Does that aid them? I think so much, and I'm on behalf of the appellants here, is that to the extent that the case law at the time, that the General Assembly is passing this legislation that is mirrored after the federal RICO. There was a series of federal cases out there determining that shareholders could not bring the same type of claim under the federal RICO statute because it was indirect. If we're going to canons of statutory interpretation, one of those canons is that when a legislature makes a difference from pattern legislation, such change suggests the desire to alter prior understandings. Then in the face of this federal case law, we have Ohio passing a similar statute, but including indirect, and that statute is a standing statute. Right, but what do you make of the other piece of your opponent's argument? So you're on direct-indirect. Let's say we grant you direct-indirect. What do you do about the duplicative recovery part? In dealing with that aspect of ADARE, I will mention that the court stated that in the conjunctive, meaning that it had to be both duplicative and indirect for a shareholder not to bring that claim. But it is not duplicative, and this was something that the BAP failed to address on the basis that it wasn't raised below, but it was raised below in the sense that we have different causes of action, different parties. The claims would be netted, so to the extent that Mr. Folson would proceed on his state law claim, whatever that amount is would of course be netted by the amount that the bankrupt estate had received. That's under the banker's trust line of cases. So the damages are different. In fact, this RICO claim didn't fully vest in Mr. Folson until that final predicate act, i.e. the resolution of the case for pennies on the dollar happened. So that was not something that was even in existence at the time of this settlement. So all of those factors show that this was not duplicative at all. There are numerous items suggesting that it's not duplicative. And there are plenty of cases out there saying that there are times where litigants are going to have overlapping damages, the single satisfaction rule. Well, that doesn't mean, as my colleague representing the banker's trust said, wait until the end. Let the bankruptcy resolve that issue and then you can bring whatever claims you want on the back end. I think a critical point here, though, is that all we're asking is do we have an ability to move forward in state court? It's standing. We're not suggesting that this court has to determine that that case is going to be successful. All we need is that Mr. Folson had a claim under the OCPA for his indirect damage, a direct claim for indirect damages. If that is the case, there's no sanctions because he was never reaching into the pocket of the trustee trying to bring claims that should have been asserted by the entity. It's a standing issue. The Court of Common Pleas... Your argument for why that filing would nevertheless not violate the automatic stay. I'm sorry? You filed in violation. The argument is, of course, your sanction here is for violating the automatic stay. Correct. And that is... And the argument is what, why you didn't violate the stay? Is it not property of the estate? Is that... That is correct. If it's Mr. Folson's claim, if he is standing to bring his own claim, automatically it can't be an asset of the estate. It's his own claim. I see I'm out of time unless there's any further questions. Entirely distinct claim. No overlap with the estate. It would have to be entirely distinct. We're saying that it's different. That was my point as it related to the Adair two-prong conjunction test. Thank you.